ERIC GRANT
United States Attorney
CODY S. CHAPPLE
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

FILED
Oct 29, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RON COOK,

Defendant.

CASE NO. 1:26-cr-00215-KES-EPG

18 U.S.C. § 1343 – Wire Fraud (Seven Counts); 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft (Two Counts); 18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering (Four Counts); 18 U.S.C. § 1957 (Spending Money Laundering) (Two Counts); 18 U.S.C. § 1014 (False Statement On Loan and Credit Application); 18 U.S.C. § 981(a)(1)(C), 982(a), and 28 U.S.C. § 2461(c) – Criminal Forfeiture

# INDICTMENT

COUNTS ONE TO SEVEN: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury charges:

RON COOK,

defendant herein, as follows:

## I. INTRODUCTION

At all times relevant to this Indictment:

1. COOK resided in Fresno County, State and Eastern District of California.

2. COOK owned and operated Corporate America Lending ("CAL"), which was a lending company based in Fresno County, State and Eastern District of California. CAL originated and serviced loans and lines of credit for farmers, ranchers, and others who work in agriculture.

3. COMPANY ONE, the Federal Agricultural Mortgage Company ("Farmer MAC"), M.G., and L.Z. provided capital for loans and lines of credit that COOK originated and serviced through CAL.

## II. SCHEME TO DEFRAUD

4. Beginning on a date unknown to the grand jury, but no later than in or around June 2023, and continuing until at least in or around October 2026, in the State and Eastern District of California and elsewhere, defendant RON COOK, acting through CAL, knowingly devised, intended to devise, participated in, and executed a material scheme to defraud COMPANY ONE, Farmer MAC, M.G., L.Z., and others, and to obtain money and property from them, by means of materially false representations, promises, and pretenses.

## III. MANNER AND MEANS

5. COOK carried out his scheme to defraud by using the following manner and means, among others:

6. In or around April 2015, COOK originated LOANS ONE and TWO totaling approximately $58,000,000. COOK then entered into an agreement with COMPANY ONE where COMPANY ONE purchased 100 percent ownership interest in the loans. Under COOK's agreement with COMPANY ONE, COOK would continue servicing the loans for a fee and COMPANY ONE was entitled to the interest and principal payments from the borrowers.

7. COOK subsequently met and corresponded with COMPANY ONE on several occasions where he misrepresented to COMPANY ONE that he would continue servicing LOANS ONE and TWO and that he would not take any other actions with respect to the loans, such as refinancing them, without telling COMPANY ONE beforehand and receiving prior authorization.

8. In or around June 2023, COOK misrepresented to M.G. that he had originated LOAN THREE totaling approximately $2,000,000 and M.G. agreed to provide the capital for the loan because of COOK's misrepresentation. As COOK well knew, however, LOAN THREE did not actually exist and he kept the money for himself.

9. In or around April 2024, the borrowers for LOANS ONE and TWO told COOK that they were going to refinance the loans with another lender and COOK misrepresented to them that he would use the money he received for the refinancing to pay their debt to COMPANY ONE in full. Importantly,

COOK did not inform COMPANY ONE about the refinancing as he was required to do under his agreement with COMPANY ONE.

10. On or about April 24, 2024, in anticipation of refinancing LOANS ONE and TWO, COOK emailed a representative at COMPANY ONE requesting to change the contact and account information on the loans from the borrowers' information to his own information so that he would receive all correspondence from COMPANY ONE regarding the loans. In doing so, COOK misrepresented to COMPANY ONE that the borrowers had authorized him to make this change when they had not done so and were unaware that he had made the request.

11. COOK changed the contact and account information for LOANS ONE and TWO from the borrowers' information to his own information because he did not plan to use the money that he received for the refinancing to pay the borrowers' debt to COMPANY ONE in full as he had promised them he would do. Instead, COOK planned to keep the money, and he did not want the borrowers to be alerted to this fact.

12. On or about April 29, 2024, the borrowers for LOANS ONE and TWO refinanced the loans through another lender and wired approximately $58,000,000 to COOK, which was the outstanding principal on the loans.

13. On or about May 2, 2024, after receiving the $58,000,000 principal for the refinancing of LOANS ONE and TWO, COOK made an interest payment on the loans for $458,582.04 to COMPANY ONE. COOK used a portion of the $58,000,000 principal he had just received to make the interest payment. Importantly, this was the first interest payment for LOANS ONE and TWO that had been made by COOK instead of the borrowers. It was also made after the borrowers had refinanced the loans with another lender and therefore did not have any legitimate business purpose. COOK made the interest payment to misrepresent to COMPANY ONE that the loans had not been refinanced and that he was still servicing them, which allowed him to keep the $58,000,000 principal undetected.

14. On or about May 2, 2024, after making the interest payment on LOANS ONE and TWO to COMPANY ONE, COOK emailed COMPANY ONE to inform them that the payment had been made. COOK sent this email to again misrepresent to COMPANY ONE that the loans had not been

refinanced and that he was still servicing them, which would allow him to keep the $58,000,000 principal undetected.

15. On or about May 6, 2024, after COMPANY ONE discovered that LOANS ONE and TWO had been refinanced and demanded that COOK return the $58,000,000 principal that he had received for the refinancing, COOK transferred a significant portion of the funds to his associates to disguise the nature, location, source, ownership, and control of the funds, including the following:

a. COOK sent approximately $10,000,000 to D.M.;

b. COOK sent $12,173,792 to M.G.;

c. COOK sent approximately $6,187,148 to M.C.; and

d. COOK sent approximately $1,000,000 to J.C.

16. In or around October 2024, M.G. asked COOK to pay back the $2,000,000 that COOK owed him for LOAN THREE, which did not actually exist as discussed above.

17. In or around February and March 2025, COOK accessed a line of credit that he had previously originated for R.M. and for which Farmer MAC had agreed to provide the capital. COOK then used the line of credit to obtain LOANS FOUR and FIVE totaling approximately $1,675,000. In doing so, COOK forged R.M.'s signature on the loan documents. R.M. did not know about or authorize these transactions, and R.M. did not receive any of the funds from the loans.

18. On or about February 6, 2025, COOK used approximately $500,000 of the $1,675,000 that he received through LOANS FOUR and FIVE to make a payment to M.G. for LOAN THREE. Then, on or about February 26, 2025, COOK used approximately $1,000,000 of the $1,675,000 that he fraudulently received through LOANS FOUR and FIVE to donate to a political cause. R.M. did not know about or authorize these transactions.

19. In or around June 2025, R.M. and Farmer MAC learned that COOK had obtained LOANS FOUR and FIVE totaling approximately $1,675,000 on R.M.'s line of credit without their knowledge or authorization, and Farmer MAC informed COOK it was going to file criminal charges against him.

20. COOK subsequently misrepresented to L.Z. that he had originated LOAN SIX to another borrower, M.G., for $2,500,000 million and forged M.G.'s signature on the loan documents. As COOK

well knew, however, LOAN SIX did not actually exist and he kept the money. M.G. did not know about or authorize this transaction.

21. As a result of COOK's misrepresentation to L.Z., L.Z. agreed to provide the $2,500,000 in capital for LOAN SIX. COOK then used a portion of the approximately $2,500,000 that he received through LOAN SIX to pay back the approximately $1,675,000 that he owed Farmer MAC and R.M. for LOANS FOUR and FIVE so they would not file criminal charges. COOK kept the remainder.

22. At all relevant times, COOK acted with the intent to defraud, and his misconduct caused a loss to COMPANY ONE, Farmer MAC, M.G., L.Z., and others of more than $64,000,000.

## IV. USE OF WIRE TRANSMISSIONS

23. On or about the dates set forth below, in the State and Eastern District of California and elsewhere, for the purpose of executing the aforementioned scheme to defraud, COOK knowingly transmitted and caused to be transmitted, by means of wire and radio communications in interstate commerce, the following writing, signs, signals, pictures, and sounds:

///

///

///

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| ONE | 4/23/24 | Email regarding change in contact and account information for LOANS ONE and TWO that COOK sent from Fresno County, State and Eastern District of California, to a representative for COMPANY ONE who was located outside California. |
| TWO | 4/29/24 | Wire transfer of approximately $33,005,910 for refinancing of LOAN ONE from account ending in 8076 that was opened outside California to CAL's account ending in 3283 that was opened in Fresno County, State and Eastern District of California, which was processed through Fedwire on computers outside California. |
| THREE | 4/29/24 | Wire transfer of approximately $25,182,067 for refinancing of LOAN TWO from account ending in 8076 that was opened outside California to CAL's account ending in 3283 that was opened in Fresno County, State and Eastern District of California, which was processed through Fedwire on computers outside California. |
| FOUR | 5/2/24 | Wire transfer of approximately $899,889.22 from CAL's account ending in 3283 that was opened in Fresno County, State and Eastern District of California, to COMPANY ONE's Agribank St. Paul bank account ending in 8688 that was opened outside California, which was processed through Fedwire on computers outside California. |
| FIVE | 2/6/25 | Wire transfer of approximately $1,500,000 for LOAN FOUR from Farmer MAC's Federal Agricultural Mortgage Corporation account ending in 0178 that was opened outside California, to CAL's account ending in 3283 that was opened in Fresno County, State and Eastern District of California, which was processed through Fedwire on computers outside California. |
| SIX | 3/28/25 | Wire transfer of approximately $175,000 for LOAN FIVE from Farmer MAC's Federal Agricultural Mortgage Corporation account ending in 0178 that was opened outside California, to CAL's account ending in 3283 that was opened in Fresno County, State and Eastern District of California, which was processed through Fedwire on computers outside California. |
| SEVEN | 7/25/25 | Wire transfer of approximately $2,500,000 for LOAN SIX from L.Z.'s United Security Bank's bank account ending in 2911 that was opened in the Eastern District of California, to Fidelity National Title's Wells Fargo account ending in 5411, in Fresno County, State and Eastern District of California, which was processed through Fedwire on computers outside California. |

All in violation of Title 18 U.S.C. § 1343.

///

///

///

<u>COUNTS EIGHT AND NINE</u>: [18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft]

The Grand Jury further charges:

RON COOK

defendant herein, as follows:

24. Paragraphs 1 through 23 are incorporated by reference as though fully set forth herein.

25. The term "means of identification" includes any name, signature, and number that may be used, alone or in conjunction with any other information, to identify a specific individual.

26. On or about the dates below, in Fresno County, State and Eastern District of California, and elsewhere, COOK did knowingly use the means of identification of another real person, without lawful authority, to wit: he knowingly used the means of identification of R.M. and M.G., including, but not limited to, their names and forged signatures on loan documents, during and in relation to an unlawful activity that constitutes a violation of federal law, to wit: wire fraud in violation of 18 U.S.C. § 1343:

| Count | Date | Person | Means of identification | Corresponding Counts |
|---|---|---|---|---|
| EIGHT | 2/6/25 | R.M. | R.M.'s name and forged signature on loan documents for approximately $1,675,000 in loans | FIVE and SIX |
| NINE | 7/24/25 | M.G. | M.G.'s name and forged signature on loan documents for approximately $2,500,000 loan | SEVEN |

All in violation of 18 U.S.C. § 1028A(a)(1).

<u>COUNTS TEN TO THIRTEEN</u>: [18 U.S.C. § 1956(a)(1)(B)(i) – Concealment Money Laundering]

The Grand Jury further charges:

RON COOK,

defendant herein, as follows:

27. Paragraphs 1 through 26 are incorporated by reference as though fully set forth herein.

28. On or about the dates below, in Fresno County, State and Eastern District of California, and elsewhere, COOK did knowingly conduct financial transactions affecting interstate and foreign

commerce, which involved property that represented the proceeds of a specified unlawful activity, to wit: wire fraud in violation of 18 U.S.C. § 1343, while knowing the property represented the proceeds of some form of unlawful activity and that the financial transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control proceeds, as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| TEN | 5/6/24 | Wire transfer of approximately $10,000,000 from CAL's account ending in 3283 to D.M.'s account ending in 6731. |
| ELEVEN | 5/6/24 | Wire transfer of approximately $12,173,792 from CAL's account ending in 3283 to M.G.'s account ending in 8880. |
| TWELVE | 5/6/24 | Wire transfer of approximately $4,987,148 from CAL's account ending in 3283 to M.C.'s account ending in 3054. |
| THIRTEEN | 5/6/24 | Wire transfer of approximately $1,000,000 from CAL's account ending in 3283 to J.C.'s account ending in 3010. |

All in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i).

<u>COUNTS FOURTEEN AND FIFTEEN</u>: [18 U.S.C. § 1957 – Spending Money Laundering]

The Grand Jury further charges:

RON COOK,

defendant herein, as follows:

29. Paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

30. On or about the dates below, in Fresno County, State and Eastern District of California, and elsewhere, COOK did knowingly engage in monetary transactions by, through, and to financial institutions, affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000, that is the withdrawal and transfer of money as more fully set forth below, while knowing that such property had been derived from a specified unlawful activity, to wit: wire fraud in violation of 18 U.S.C. § 1343:

///

///

///

| Count | Date | Monetary Transaction |
|---|---|---|
| FOURTEEN | 2/6/25 | Wire transfer of approximately $500,000 from a Fresno First Bank account ending in 3415 to M.G.'s account ending in 8880 to pay a debt owed to M.G. |
| FIFTEEN | 2/26/25 | Wire transfer of approximately $1,000,000 from a Fresno First Bank account ending in 3415 to Chain Bridge Bank account ending in 3252 that was a donation for a political cause |

All in violation of Title 18 U.S.C. § 1957.

COUNT SIXTEEN: [18 U.S.C. § 1014 – False Statement on Loan and Credit Application]

The Grand Jury further charges:

RON COOK,

defendant herein, as follows:

31. Paragraph 17 is incorporated by reference as though fully set forth herein.

32. In or around February and March 2025, in Fresno County, State and Eastern District of California, and elsewhere, COOK knowingly made a false statement for the purpose of influencing the actions of Farmer MAC, which is a government-sponsored enterprise chartered under the Farm Credit Act and is therefore subject to the provisions of 18 U.S.C. § 1014, in connection with an application, commitment, and loan, in that COOK falsely represented R.M. had signed for and authorized LOANS FOUR and FIVE.

All in violation of Title 18 U.S.C. § 1014.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) - Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Nine of this Indictment, defendant RON COOK shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including, but not limited to:

a. A sum of money equal to the amount of proceeds traceable to such offenses, for which defendant is convicted.

2. Upon conviction of one or more of the offenses alleged in Counts Ten through Sixteen of this Indictment, defendant RON COOK shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such offenses, and any property traceable to such property, including but not limited to the following:

a. A sum of money equal to the amount of money involved in the offenses, for which defendant is convicted.

3. If any property subject to forfeiture as a result of the offenses alleged in this Indictment, for which defendant is convicted:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

**/s/ Signature on file w/AUSA**

FOREPERSON

/s/ Eric Grant

ERIC GRANT
United States Attorney